UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MANDEEP SINGH, | : |
|          Plaintiff, | : Case No._____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| U.S. GOLD CORP., JOHN N. BRACA, | : **THE FEDERAL SECURITIES LAWS** |
| TIMOTHY M. JANKE, ANDREW KAPLAN, | : |
| EDWARD M. KARR, RYAN K. ZINKE, and | : **JURY TRIAL DEMANDED** |
| DOUGLAS NEWBY, | : |
|          Defendants. | : |

---

Plaintiff Mandeep Singh ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against U.S. Gold Corp. ("U.S. Gold" or the "Company") and the members of U.S. Gold's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on the issuance of shares of U.S. Gold common stock in accordance with Nasdaq Listing Standard Rule 5635(a) ("Rule 5635(a)") and Nasdaq Listing Standard Rule 5635(d) ("Rule 5635(d)") (the "Share Issuances").

2. On August 12, 2020, U.S. Gold announced that it had entered into an Agreement and Plan of Merger dated August 10, 2020 (the "Merger Agreement") with Northern Panther

Resources Corporation ("Northern Panther"), Gold King Acquisition Corp. ("Acquisition Corp."), and Richard Silas ("Stockholder Representative"), pursuant to which Acquisition Corp. merged with and into Northern Panther, with Northern Panther surviving as a wholly-owned subsidiary of the Company (the "Merger").  Pursuant to the Merger Agreement, at closing of the Merger, which occurred on August 11, 2020, Northern Panther shares were converted into and represent the right to receive: (i) 581,053 shares of Company common stock; and (ii) 106,894 shares of newly created Series H Preferred Stock (the "Merger Consideration"), which Series H Preferred Stock is expected to convert into Company common stock on a 1 for 10 basis.

3. Concurrently with the execution of the Merger Agreement, on August 10, 2020, U.S. Gold entered into a Securities Purchase Agreement ("SPA") with certain investors ("Purchasers"), pursuant to which the Company sold to the Purchasers in a private placement (i) an aggregate of 921,666 shares of the Company's Series I Preferred Stock, convertible into one share of Company common stock; and (ii) private warrants ("Warrants") to purchase an aggregate of 921,666 shares of Company common stock at an exercise price of $6.00 per share for aggregate consideration of $5,530,004.

4. U.S. Gold's common stock trades on the Nasdaq Capital Market.  Rule 5635(a) and Rule 5635(d) require U.S. Gold to seek stockholder approval of the Share Issuances.[1]  On

---

[1] The Proxy Statement (defined below) sets forth:

> Prior to closing the Merger, we had 2,919,867 shares of common stock outstanding. Therefore, potential issuance of our common stock upon the conversion of the Series H Preferred Stock would have constituted approximately 37% of the shares of common stock outstanding prior to giving effect to the Merger. Consequently, issuance of the 1,068,940 shares of common stock issuable upon conversion of the Series H Preferred Stock, which, in absence of the Series H Exchange Cap, would be in excess of 19.99% of the shares of common stock outstanding on the date of

September 14, 2020, defendants filed a Definitive Proxy Statement (the "Proxy Statement") with the SEC. Proposal 1 of the Proxy Statement seeks stockholder approval of the Share Issuance pursuant to Rule 5635(a).[2] Proposal 2 of the Proxy Statement seeks stockholder approval of the Share Issuance pursuant to Rule 5635(d).[3]

---

> entry into the Merger Agreement, is subject to stockholder approval pursuant to the Nasdaq Stock Market Rule 5635(a).
>
> \*\*\*
>
> Prior to closing the SPA, we had 2,919,867 shares of common stock outstanding. Therefore, the potential issuance of 921,666 shares of our common stock underlying the Series I Preferred Stock and 921,666 shares of our common stock underlying the Private Warrants would have constituted approximately 63% of the shares of common stock outstanding prior to giving effect to the SPA, which, in absence of the Series I Exchange Cap and the Private Warrants Exchange Cap, would be in excess of 19.99% of the shares of common stock, and accordingly, is subject to stockholder approval pursuant to the Nasdaq Stock Market Rule 5635(d).

Proxy Statement at 12, 15.

[2] The Proxy Statement sets forth:

> **PROPOSAL 1: NASDAQ RULE 5635(a) PROPOSAL**
>
> At the Annual Meeting, holders of our common stock will be asked to approve the issuance in excess of 20% of our outstanding common stock upon the conversion of Series H Preferred Stock issued by us pursuant to the Merger Agreement (as defined below) entered into on August 10, 2020, for purposes of compliance with Nasdaq Listing Rule 5635(a) and as required by the Merger Agreement.

*Id.* at 11 (emphasis in original).

[3] The Proxy Statement sets forth:

> **PROPOSAL 2: NASDAQ RULE 5635(d) PROPOSAL**
>
> At the Annual Meeting, holders of our common stock will be asked to approve the issuance in excess of 20% of our outstanding common stock upon the (i) potential conversion of the Series I Preferred Stock and (ii) potential exercise of the Private Warrants issued by us pursuant to the SPA (as defined below) on August 11, 2020,

5. If the Company's stockholders vote to approve the Share Issuances, Northern Panther stockholders and the Purchasers will have the ability to control 2,912,272 shares of U.S. Gold common stock, and thus achieve effective control over the Company. Coupled with the 581,053 Northern Panther shares that have already converted into U.S. Gold shares pursuant to terms of the Merger Agreement, approval of the Share Issuances will render approximately 55% of the combined company's common stock under the control of the Purchasers and Northern Panther stockholders.

6. Moreover, in connection with the closing of the Merger, the Company appointed George Bee ("Bee"), an initial investor of Norther Panther, as President of the Company. The Company has nominated Bee for election to the Board and the Board intends to appoint Bee to replace the Company's current Chief Executive Officer ("CEO"), Edward M. Karr ("Karr"), as CEO following the stockholder vote. In addition to Bee, two additional directors will be nominated to serve on the Board (including Northern Panther's founder Robert Schafer), and three of the Company's current directors are expected to resign following the stockholder vote.

7. In short, the net effect of the terms of the Merger and Share Issuances, in conjunction with the change in leadership and Board membership incident to the transaction, is a takeover of the Company by Bee and his Northern Panther partners and investors.

8. Yet, the Proxy Statement provided to Company stockholders in connection with the Share Issuances provides none of the information necessary to render this critical change-in-control decision. More particularly, the Proxy Statement omits or misrepresents material

---

for purposes of compliance with Nasdaq Listing Rules 5635(a) and 5635(d) and as required by the SPA.

*Id.* at 14.

information concerning, among other things: (i) the background process leading up to the Share Issuances; (ii) a summary of any financial analyses prepared by the Company's management and/or the Company and Board's Financial Advisor[4] and considered and relied upon by the Board in connection with the Individual Defendants' decision to approve the Share Issuances; (iii) a fair summary of the Financial Advisor's fairness opinion considered and relied upon by the Board in connection with the Individual Defendants' decision to approve the Share Issuances; (iv) potential conflicts of interest; and (v) a summary of U.S. Gold management's financial projections.

9. In short, U.S. Gold's public stockholders will be forced to make a decision to approve the Share Issuances and hand over control of their Company without full disclosure of the most critical and material valuation, conflict, fairness and process information being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Shares Issuances unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

11. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

---

[4] A Canadian "independent mining investment bank" that among other things provided the Company and the Board with a fairness opinion, further defined below.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, U.S. Gold common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

13. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of U.S. Gold.

14. Defendant U.S. Gold is a Nevada corporation, with its principal executive offices located at 1910 East Idaho Street, Suite 102-Box 604, Elko, Nevada 89801. The Company is a gold and precious metals exploration company pursuing exploration opportunities primarily in Nevada and Wyoming. U.S. Gold's common stock trades on the Nasdaq Capital Market under the ticker symbol "USAU."

15. Defendant John N. Braca has been Chairman of the Board since September 2018 and a director of the Company since May 2017.

16. Defendant Timothy M. Janke has been a director of the Company since May 2017.

17. Defendant Andrew Kaplan has been a director of the Company since November 2017.

18. Defendant Karr has been CEO of the Company since May 2017 and a director of the Company since June 2015.

19. Defendant Ryan K. Zinke has been a director of the Company since April 2019.

20. Defendant Douglas Newby has been a director of the Company since September 2019.

21. Defendants identified in paragraphs 15-20 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Share Issuances**

22. U.S. Gold is an exploration company that owns certain mining leases and other mineral rights comprising the Copper King Project in Wyoming and the Keystone, Maggie Creek, and Gold Bar North Projects in Nevada.

23. The Copper King Project consists of certain mining leases and other mineral rights comprising the Copper King gold and copper exploration project located in the Silver Crown Mining District of southeast Wyoming. For fiscal year 2020, the majority of the Company's efforts focused on advancing the Copper King Project further towards an eventual production decision.

24. The Keystone Project consists of 650 unpatented lode mining claims in Eureka County, Nevada.

25. The Maggie Creek Project is an exploration project located along the eastern side of the Carlin gold belt, directly northeast of Newmont Mining's 25-million-ounce Gold Quarry mine.

26. The Gold Bar North Project is a gold exploration project also located in Eureka County, Nevada.

27. On August 10, 2020, U.S. Gold entered into the Merger Agreement with Northern Panther, Acquisition Corp., and the Stockholder Representative, pursuant to which Northern Panther shares were converted into and represent the right to receive: (i) 581,053 shares of Company common stock; and (ii) 106,894 shares of newly created Series H Preferred Stock, which Series H Preferred Stock are expected to convert into Company common stock on a 1 for 10 basis.

Prior to closing the Merger, the Company had 2,919,867 shares of common stock outstanding. Assuming conversion of the Series H Preferred Stock, Northern Panther would beneficially own approximately 37% of the shares of common stock outstanding prior to giving effect to the Merger.

28.     On August 10, 2020, U.S. Gold entered into the SPA with the Purchasers, pursuant to which the Company sold to the Purchasers in a private placement (i) an aggregate of 921,666 shares of the Company's Series I Preferred Stock, convertible into one share of Company common stock; and (ii) Warrants to purchase an aggregate of 921,666 shares of Company common stock at an exercise price of $6.00 per share for aggregate consideration of $5,530,004. Assuming conversion of the Series I Preferred Stock and exercise of the Warrants, the Purchasers would beneficially own approximately 63% of the shares of common stock outstanding prior to giving effect to the SPA.

29.     On August 12, 2020, U.S. Gold issued a press release announcing the entry into, and closing of, the Merger and the SPA, which states, in relevant part:

> **ELKO, NV, August 12, 2020** – U.S. Gold Corp. (Nasdaq: USAU) (the "Company") a gold exploration and development company, is pleased to announce it has closed the acquisition of Northern Panther Resource Corporation ("Northern Panther") in an all-share transaction pursuant to a merger agreement between Company and Northern Panther. Northern Panther, a Nevada corporation, has merged into a new subsidiary of U.S. Gold Corp. Northern Panther's principal asset is the Chalice Gold exploration project and it also has $2.5 million in cash. Concurrently with the closing of the merger, several Northern Panther shareholders have led a concurrent financing in which the Company received subscriptions for shares of its preferred stock and warrants up to $5.5 million, bringing a total of up to $8.0 million in additional capital to the Company.
>
> Northern Panther's Chalice Gold Project provides U.S. Gold Corp. with its newest exploration project, located in Idaho. The founding group of Northern Panther has significant experience in growing mining companies with Chalice Gold being a high-priority drill-ready target in a premier and growing U.S. gold district.
>
> Under the terms of the merger agreement, U.S. Gold Corp. has issued 581,053 restricted common shares to shareholders of Northern Panther, in addition to 106,894 shares of newly created Series H perpetual preferred stock. Each share of

Series H preferred stock will potentially convert into 10 common shares of U.S. Gold Corp. following a shareholder vote, anticipated to be on the Proxy Statement at the Company's next annual general meeting.

Northern Panther is a newly formed Nevada corporation comprised of leading mining industry shareholders. One of its shareholders, Mr. George Bee, is a seasoned mining industry professional. His career spans over 30 years of experience operating and developing world-class mines and projects, most recently in Latin America. He was the former President, CEO and Director of Andina Minerals Inc. and served on the Board of Directors of Peregrine Metals, which was acquired by Stillwater Mining Company. Previously, he was Chief Operating Officer at Aurelian Resources, Inc. where he was primarily responsible for the development of the Fruta del Norte Project in Ecuador. Prior to that, Mr. Bee was Director, Technical Projects for Barrick Gold Corporation. During his 16-year career at Barrick, he was responsible for a number of operating and development projects. Having been part of the team that developed Goldstrike in Nevada in phases between 1988 and 1995, he left Goldstrike as Mine Manager. In 1998, Mr. Bee returned to Barrick as Operations Manager to bring together the operating team and work to finalize the construction and commence operations at the Pierina gold mine in Peru, culminating in his oversight of the first full year of production of over 800,000 oz of gold. He left in 2000 for the Pascua Lama project in Chile before moving in 2002 to the Veladero mine, where he was responsible for leading the team that took the mine from advanced exploration through feasibility, permitting and into production. Veladero was the first major mine investment to be made in Argentina's San Juan province and one of the first investments in Argentina after the financial crisis of 2001-2002. Mr. Bee is a graduate of the Camborne School of Mines in Cornwall, United Kingdom.

Another notable Northern Panther shareholder, Mr. Robert Schafer, has more than 40 years of exploration and mergers and acquisition experience in both the junior and senior mining sectors. Mr. Schafer has mining experience in more than 70 countries. His past executive management and Board experience includes Hunter Dickinson Group, Kinross Gold and BHP Billiton. Mr. Schafer is the former President of the SME, PDAC, CIM, MMSA and Boards of Mining Halls of Fame in the US and Canada. Mr. Schafer was awarded the Saunders Gold Medal (A.I.M.E), Jackling Award (SME) and Dreyer Award (SME) for career achievements in the mining industry.

"Northern Panther Resource Corporation is another strategic acquisition for U.S. Gold Corp. In addition to acquiring this new high potential exploration project, we are very pleased to welcome Mr. George Bee, Mr. Robert Schafer and others as new shareholders of U.S. Gold," stated Edward Karr, President & CEO of U.S. Gold Corp. "This acquisition was very attractive for our Board, and we view this as a win for our shareholders," Mr. Karr continued. "We are acquiring not only an additional high-potential exploration project, but a significant cash balance and some of the industry's leading shareholders, who plan to be very hands-on going

> forward. The Chalice Gold project is located in the western state of Idaho and has, we believe, significant upside exploration potential. USAU shareholders now benefit from exploration and development projects in three of what we believe are the best U.S. states for mining development – Wyoming, Nevada and Idaho."
>
> The Chalice Gold Project is located approximately 75 kilometers southwest of Salmon, Idaho, within the tertiary challis volcanic field. The Chalice Gold Project is a low sulfidation, gold/silver epithermal vein and stockwork deposit localized along intersecting NW – NE trending shear structures in a window of sedimentary rocks exposed through the challis volcanics. The Project has a historic 43-101 (not current) resource of approximately 313,825 ounces of gold at a grade of 1.22 grams / ton gold, with a potential low strip ratio and exploration upside potential. U.S. Gold Corp. will be designing and announcing future exploration programs to advance the project.
>
> We received subscriptions from investors to acquire 921,666 shares of newly created Series I preferred stock and warrants to purchase 921,666 shares of our common stock at an exercise price of $6.00 per share in the concurrent financing. Each share of Series I preferred stock will potentially convert into 1 common share of U.S. Gold Corp. following a shareholder vote, anticipated to be on the Proxy Statement at the Company's next Annual General Meeting. The exercise of the warrants is also subject to shareholder approval at the next Annual General Meeting. The closing of the financing is subject to customary closing conditions.

30. Notably, the Warrants have an exercise price of $6.00 per share – a significant discount to the Company's recent stock price, which has consistently traded above $6.00 per share since May 22, 2020. On August 7, 2020, the last trading day before entering into the Merger Agreement and the SPA, the Company's stock closed at $8.52 per share.

**The Proxy Statement Contains Material Misstatements or Omissions**

31. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to U.S. Gold's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Share Issuances.

32. The Proxy Statement fails to disclose material information concerning the background process leading up to the Share Issuances. For example, the Proxy Statement fails to

disclose: (i) the details of the process leading up to the Merger with Northern Panther, including whether any additional parties were contacted; (ii) if additional parties were contacted, whether those parties entered into confidentiality agreements containing standstill provisions; (iii) any negotiations concerning the Merger Agreement and SPA; (iv) the details of any Board discussions concerning the $6.00 per share exercise price of the Warrants; and (v) any alternatives considered by the Board.

33. Moreover, a Letter to Shareholders filed with the SEC on October 13, 2020, sets forth that, "U.S. Gold Corp. conducted extensive due diligence on Northern Panther Resource Corporation. The Board engaged an independent mining investment bank located in Canada to thoroughly review the transaction and valuation and provide a fairness opinion on the acquisition [(the "Financial Advisor")]. After months of discussions and negotiations, the transaction closed in mid-August." October 13, 2020 Form 8-K, Ex. 99.1.

34. The Proxy Statement, however, fails to disclose the results of any due diligence undertaken by the Board or U.S. Gold management, as well as any financial analysis prepared by U.S. Gold management and considered and relied upon by the Board in connection with the Individual Defendants' decision to approve the Share Issuances.

35. Additionally, the Proxy Statement fails to disclose (i) the identity of the Board's Financial Advisor; (ii) the valuation and financial analyses performed by the Financial Advisor; (iii) the fairness opinion provided by the Financial Advisor; (iv) the amount of compensation the Financial Advisor received or will receive in connection with its engagement; and (v) the prior services provided by the Financial Advisor to any parties to the Merger Agreement and SPA or their affiliates, and any fees received in connection with such services.

36. The Proxy Statement further fails to disclose a summary of any financial projections prepared by U.S. Gold management and relied upon by the Board, Company management, or the investment bank engaged by the Board in connection with the Individual Defendants' decision to approve the Share Issuances.

37. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Share Issuances, Plaintiff and the other stockholders of U.S. Gold will be unable to make an informed voting decision in connection with the Share Issuances and whether to turn over control of their Company to Northern Panther and its investors, and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

38. Plaintiff repeats all previous allegations as if set forth in full.

39. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

40. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the background process leading

up to the Share Issuances, any financial analyses performed by U.S. Gold management or a financial advisor, potential conflicts of interest, and Company management's financial projections. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Share Issuances.

42. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

44. Plaintiff repeats all previous allegations as if set forth in full.

45. The Individual Defendants acted as controlling persons of U.S. Gold within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of U.S. Gold, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Share Issuances. They were, thus, directly involved in the making of the Proxy Statement.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, U.S. Gold stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of U.S. Gold, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Share Issuances and any

vote on the Share Issuances, unless and until defendants disclose and disseminate the material information identified above to U.S. Gold stockholders;

  B. In the event defendants consummate the Share Issuances, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 27, 2020        **WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*